IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

**Plaintiff,**

vs.                                                                 Cr. No.   13-3309 JCH

ALLAN MENDOZA,

**Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Mr. Mendoza's Motion for Suppression of Evidence and Incorporated Memorandum* [Doc. 24]. On February 20, 2014, the Court held an evidentiary hearing on the motion at which Defendant Allan Mendoza was represented by counsel.

The motion presents primarily a fact issue. The parties have fundamentally divergent views of what happened on the day that law enforcement officers encountered the defendant on a Greyhound bus. However, they substantially agree on the legal implications of their respective versions of events. Accordingly, the motion to suppress presents first and foremost an issue of fact for the Court. After considering the motion, the response, the testimony, the evidence, and the applicable law, the Court concludes that the motion should be denied.

## FINDINGS OF FACT

Agent Kevin Small, employed with the Drug Enforcement Administration ("DEA"), specializes in drug interdiction. On the evening of September 23, 2013, Small encountered Allan Mendoza, who was traveling on a Greyhound bus passing through Albuquerque, New Mexico.

Doc. 24 at 2. Mendoza had boarded the train in Phoenix, Arizona and was bound for Des Moines, Iowa. *Id*. at 59-60. When the bus stopped at the Albuquerque bus station, all the passengers got off as required by Greyhound policy so that the bus could be cleaned and maintained. Transcript of Feb. 20, 2014 hearing (hereafter, "Tr.") at 6, 28-29. Typically, once the bus has been cleaned, the driver inspects the bus. *Id*. At that point, the DEA agents ask the driver when he plans to begin reboarding passengers. *Id*. Just before the driver does so, the agents themselves board the bus to await passengers so that they can conduct consensual encounters and ask them about their travel plans. *Id*. at 36.

On the evening of September 23, 2013, Small was accompanied by two task force officers, Nick Ramos and Rudy Mora, who were assigned from the Laguna Pueblo police department to perform drug interdiction work with the DEA. *Id*. at 16-17. The three watched passengers get off the bus in Albuquerque; Small does not recall whether on this occasion they looked at the luggage in the storage bay in the "belly of the bus." *Id*. at 8, 30. Mendoza left his red backpack, which contained methamphetamine concealed in two black socks, on his seat while he went inside. *Id*. at 60-61. When the driver permitted passengers to board the bus, Small and Ramos boarded the bus first and waited for passengers to get on. *Id*. at 7, 32-33. Mora did not get on the bus. *Id*. at 17. After they climbed into the passenger seating area, Small and Ramos were together on the bus the entire time. *Id*. at 12. They were not looking for anyone in particular. *Id*. at 13, 26-28. Ramos was talking to passengers at the front half of the bus, while Small was talking to those in the rear half; both were standing in the aisle. *Id*. at 13-14; 61. These were consensual encounters. *Id*. at 14. At some point, Small and Ramos switched positions, such that Small was in the front of the bus and Ramos was in the back. *Id*. at 15. Sometime after that, Small saw Mendoza board the bus and then, after a short period of time, get back off the bus

2

carrying a bag. *Id*. at 15-16, 37-38, 58. According to Small, drug couriers often get off the bus in this manner when they realize that law enforcement officers are on board. *Id*. at 15. Further, a passenger may be getting off the bus to obtain a weapon. *Id*. at 38. Thus, Mendoza's actions piqued the agents' interest. *Id*. at 37, 39. Small saw Mendoza walk around the back of the terminal building, where he disappeared from view behind the bus station, and then reboard the bus with his bag a short time later. *Id*. at 16, 58.

After Mendoza got on the bus the second time, Ramos conducted a consensual encounter with him, which Small was able to observe. *Id*. at 17. Mendoza was seated, and Ramos was standing in the aisle. *Id*. The two had a conversation, which Small noticed was longer than a typical consensual encounter and led him to believe that Ramos may have suspected that Mendoza was a drug courier. *Id*. at 18. Mendoza asked for and received permission to search Mendoza's backpack. *Id*. at 19, 39, 64; Gov't Exhibit 1. Ramos performed the search, and then Mendoza gave Ramos consent to do a pat down search of his body. *Id*. at 39, 64. Small saw Ramos ask Mendoza to stand up, and saw Mendoza do so without being touched by Ramos. *Id*. at 19, 24. Ramos then searched Mendoza's person, resulting in Ramos feeling but not seeing a foreign object concealed in Mendoza's pants. *Id*. at 39, 64-65. At this point, no foreign object was visible. *Id*. at 43-44; Ex. A. Mendoza sat down, and Small could hear Ramos placing handcuffs on Mendoza. *Id*. at 19-20, 40. At little while later, Ramos and Small removed Mendoza from the bus and walked him to a location outside the station. *Id*. at 40, 42-43; Def't Exhibit A. Small asked Ramos if the contraband was in the bag or on Mendoza's person, and Ramos responded that it was on him. *Id*. at 46. A more thorough search of Mendoza's person, which involved partially disrobing him, revealed a cylindrical object concealed in a black sock

under his pants; the sock contained methamphetamine. *Id*. at 19-20, 44-45; Deft's Exhibits B, C, and D.

Mendoza suggests an alternate version of events in which either Ramos alone or both Ramos and Small together conducted an illegal search of Mendoza's bag while he and all the other passengers were inside the bus station, and in doing so discovered that he was in possession of an illegal substance before he ever reboarded the bus or had a consensual encounter with Ramos. Mendoza testified that after the agents removed him from the bus, but before they unfastened his pants to reveal the top of a black sock hanging over the waistband, Small asked "What does he have?" and Ramos responded, "It's a black sock." Mendoza testified that the black sock containing the methamphetamine was originally contained in the small bag he had with him on board the bus, and which he left on the bus when all of the passengers went to the bus station while Greyhound employees cleaned and refueled it. *Id*. at 60-61. However, he testified that when he reboarded the bus and realized that law enforcement officers were on board, he got off the bus, this time taking his bag with him. *Id*. at 61-62. He went into the men's bathroom of the bus station, where he hid the black sock inside the pants and boxer shorts he was wearing. *Id*. at 62. Mendoza then boarded the bus once again, and Ramos conducted the consensual encounter shortly thereafter. *Id*. at 64. After Ramos did the pat down and cuffed Mendoza, the agents removed him from the bus. *Id*. at 64-65. A few moments later, while he was standing outside, Mendoza was able to hear conversation between Small and Ramos. *Id*. at 65-66. He testified that Small asked Ramos, "What's he got?" and Ramos responded, "It's a black sock in his pants." *Id*. at 66-67. Because the agents had not yet partially removed his clothing to reveal the black socks hidden in his pants, Mendoza wondered how Ramos knew what he was concealing there. *Id*. at 67. According to Mendoza's argument, Ramos could not have known that

Mendoza had narcotics hidden inside a black sock before his clothing was partially removed unless Ramos had illegally searched Mendoza's bag and seen the black sock while Mendoza and the other passengers were off the bus. Doc. 24 at 2-3. Both parties agree that such a search, if it happened, would violate the Fourth Amendment.

For several reasons, the Court does not accept Mendoza's version of events. First, at the hearing the Court assessed Small's demeanor and found him credible when he testified that he and Ramos did not search bags on the bus without either consent of the owner or a search warrant. *Id*. at 12, 20, 72. Also credible was Small's testimony that Ramos would not have been able to search bags on the bus without Small's knowledge, and that he did not do so. *Id.* at 20-21. Second, Small testified that—if indeed Ramos and/or Small had improperly searched and found the black sock containing methamphetamine in Mendoza's bag—they never would have allowed Mendoza get off the bus with the bag, thereby giving him the opportunity to escape with the contraband. *Id*. at 72. The Court finds this testimony reasonable and credible; it makes no sense that agents would knowingly have permitted Mendoza to walk away with drugs. Third, in this Court's experience, the scene of an arrest that take place on buses and trains is often crowded, noisy, bustling, and tension-filled. Under such circumstances, it would be easy for Mendoza to either misinterpret a statement by Ramos, or to be mistaken as to his recollection of the timing of such a statement.

However, despite this factual finding, the Court does not conclude that Mendoza was lying on the witness stand. In fact, he struck the Court as sincere while testifying at the evidentiary hearing, and the Court concludes that Mendoza probably believes that he heard Ramos tell Small, "It's a black sock." Under the stress of the situation, given the fact that he had

been arrested only moments earlier with narcotics on his person, Mendoza likely misunderstood what Ramos said.

### DISCUSSION

Based on the foregoing factual findings, the Court concludes that neither of the legal arguments for suppression has merit. First, there was no illegal, warrantless search of Mendoza's bag. The Court concludes that no such search took place while passengers were off the bus. Second, there is no evidence to support Mendoza's written argument that he did not voluntarily consent to the search of his bag and person. *See* Doc. 24 at 4-5. Nothing in the record, including Mendoza's own testimony, indicates that Mendoza was under any duress or coercion when he consented to those searches.

**IT IS THEREFORE ORDERED** that *Mr. Mendoza's Motion for Suppression of Evidence and Incorporated Memorandum* [Doc. 24] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**